UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GENERAL DRIVERS, WAREHOUSEMEN
AND HELPERS LOCAL UNION NO. 89                                         PLAINTIFF/
                                                            COUNTERCLAIM DEFENDANT

v.                                                          CIVIL ACTION NO. 3:03-CV-791-S

ROBERT WINSTEAD, et al.                                                 DEFENDANTS/
                                                                     COUNTERCLAIMANTS

## MEMORANDUM OPINION

This matter is before the court upon the motion of the plaintiff/counterclaim defendant, General Drivers, Warehousemen, and Helpers Local Union No. 89 ("Local 89" or the "Union"), for partial summary judgment (DN 90). Local 89 contends that no genuine issue of material fact underlies the counterclaims asserted against it by the defendants/counterclaimants Robert Winstead ("Winstead") and Gary Hug ("Hug").

## BACKGROUND

In the late 1990's Winstead and Hug were officers in Local 89. Winstead served as president, and Hug as secretary-treasurer. In December 1999, both men were defeated in elections for new officers. The new officers were installed in January 2000. Between February 1999 and leaving office in January 2000, Winstead and Hug signed a number of checks drawn on Local 89 funds which totaled $107,265.31. These checks were used to pay for legal services rendered on behalf of Winstead and two former union members Lon Fields, and Danny Ross, in connection with criminal proceedings following their 1998 indictments for violating Kentucky's campaign finance laws.

After a long legal battle concerning the legality of the indictments, the three were ultimately pardoned by Governor Paul Patton in 2003, prior to trial.

In May 2003, Local 89 brought formal charges against Winstead and Hug, alleging that they violated their fiduciary duties by spending Union funds without proper authorization. A formal hearing was held in July 2003 during which an International Brotherhood of Teamsters (IBT) panel determined that Winstead and Hug had breached their fiduciary duties. The IBT panel recommended that they be held jointly and severally liable to Local 89 for $107,265.31, the amount they had withdrawn from Union funds without proper authorization. The panel's recommendation was then adopted on behalf of the IBT.

The Union's November-December 2003 issue of the "Local 89 Teamster" newsletter, included an article entitled: "Panel Orders Winstead and Hug to Reimburse $107,265.31 to Local 89." The article stated in its entirety:

> On May 28, 2003, Teamsters Local 89 filed formal charges against Robert Winstead and Gary Hug for violating their fiduciary responsibilities. The union charged them with improperly spending union dues dollars without receiving rank-and-file authorization.
>
> A hearing was held on July 17, 2003 in Louisville, Kentucky. At the hearing, President Zuckerman and Staff Attorney Rob Colone presented the union's case. The union charged Winstead and Hug with writing and endorsing checks from Local 89's general fund to pay for unauthorized expenses.
>
> The IBT panel found Winstead and Hug guilty of the charges of breach of fiduciary responsibilities. The panel said that they never asked for, and never received approval to spend huge sums of rank-and-file dues dollars for those expenses. In addition, they spent a large amount of money from the time they lost their union election and the time the new Executive Board was sworn in, and again without membership approval.
>
> Winstead and Hug were found guilty of violating the IBT Constitution and Local 89 bylaws. <u>They were ordered to reimburse the union $107,265.31 in dues dollars that they illegally spent for their own personal purposes</u>. This is a victory for the

- 3 -

      membership, and a victory against those who put their personal interests ahead of the membership.  (Emphasis added).

Because Winstead and Hug did not pay the Union in compliance with the IBT's decision, Local 89 filed this action to recover the funds.  Winstead and Hug filed counterclaims against Local 89, asserting that the November-December 2003 newsletter article defamed them by stating that they "illegally spent (union funds) for their own personal purposes."  Winstead also asserts an additional count in his counterclaim alleging that he is entitled to $7,624.00 in legal fees incurred by him in connection with the criminal proceedings stemming from the indictment for violating Kentucky's campaign finance law.

In this court's August 24, 2006, Memorandum Opinion and Order (DN 81) we found, as a matter of law, that Winstead and Hug's actions constituted a breach of fiduciary duty.  We concluded that the IBT panel's decision was not unfair or unreasonable and that joint and several liability of Winstead and Hug for $107,265.31 constitutes proper restitution in light of their writing checks for this amount from the Union funds without obtaining proper authorization. Local 89 now moves for summary judgment as to Winstead and Hug's counterclaims for defamation and Winstead's counterlclaim for legal fees.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the

substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Defamation by writing is libel. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). To prove a *prima facie* case of common law libel in Kentucky, a plaintiff must provide proof of: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Id.* Written words which impute a crime, such as theft, to an individual are actionable as libel per se. *Id.* at 795. When the defamatory language at issue is actionable as libel per se, the plaintiff is not required to prove malice or special damages in order to recover. *Id.* at 794-95.

Winstead and Hug claim that Local 89's November-December 2003 newsletter article contains defamatory language which constitutes libel per se because it asserts that they committed the crime of theft by taking money belonging to the Union members and personally profiting from it. The portion of the article which contains the alleged defamatory language is found in the last paragraph and states:

> They [Winstead and Hug] were ordered to reimburse the union $107,265.31 in dues dollars <u>that they illegally spent for their own personal purposes</u>. (Emphasis Added).

Local 89 sets forth a number of arguments in support of its motion for summary judgment. Among them is the argument that the alleged defamatory statement does not impute the commission of a crime to Winstead or Hug and is therefore, not defamatory language. Alleged defamatory words must be construed in their most natural meaning and in the sense in which they would be understood by those to whom they were addressed. *Yancey v. Hamilton*, 786 S.W.2d 854, 858 (Ky. 1989). Although it is usually the court's function to determine whether a crime imputed by published statements is actionable as libel per se, where the words at issue are capable of more than one meaning, the jury should decide which of the meanings a recipient of the message would attribute to it. *Id.* It is an elementary principle of the law of libel that the alleged defamatory words should be construed as a whole. *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981). Therefore, courts must analyze the article in which the alleged defamatory words are contained in its entirety to determine if its "gist" or "sting" is defamatory. *Id.*

Taken in isolation, the language at issue could be construed to mean that Winstead and Hug had committed the crime of theft by taking Union funds. However, when viewed in the context of the entire article and the circumstances surrounding its publication, the language cannot be construed to impute to Winstead and Hug the commission of a criminal act. Therefore, it is not actionable as libel per se.

At the very outset, the article clearly indicates that the charges against Winstead and Hug were filed by the Union. It also indicates that the IBT panel was the body responsible for conducting the hearing to resolve the charges. Repeated references are made throughout the article to the

findings of the IBT panel. Although the article does state that the funds were "illegally spent," nowhere does it state or imply that Winstead and Hug committed a crime or were subject to criminal proceedings for their unauthorized use of Union funds. The word "illegal" is defined as "forbidden by law" or "forbidden by official rules." *Webster's II New Riverside University Dictionary* 608 (1994). Before stating that the funds were "illegally spent," the article states that "[t]he IBT panel found Winstead and Hug guilty of the charges of breach of fiduciary duty responsibilities," and that "Winstead and Hug were found guilty of violating the IBT Constitution and Local 89 bylaws." Clearly, the use of the word "illegal" in this context does not impute criminal activity to Winstead and Hug, but rather indicates that their action was forbidden by their fiduciary duties, the IBT Constitution, and the Local 89 bylaws.

Additionally, the article was published in the "Local 89 Teamster" newsletter, a Union periodical published for and distributed to Local 89 members. As Union members, the recipients of the article would be aware of the internal processes in place for resolving charges against Union members. They would also be aware of the role of an IBT panel and understand that its function is not to determine criminal culpability. No Union member could read the article's description of the charges and the IBT panel's findings and conclude that Winstead and Hug had committed a crime. Accordingly, the court does not find the language at issue to be actionable as libel per se.

Although the above conclusion is dispositive of Winstead and Hug's defamation claims, we also consider the Union's argument that its statements in the article are protected under a qualified privilege. Kentucky law recognizes a qualified privilege for communications made in good faith between persons with a common interest. *Wolff v. Benovitz*, 192 S.W.2d 730, 733 (Ky. App. 1946). This qualified privilege attaches to statements made in connection with the activities of

organizations such as labor unions. *Id.* "It is well settled that members of such bodies may. . . make proper publication of any disciplinary action that may be taken, without liability for any resultant defamation, so long as they act without malice." *Id.* Although Kentucky law presumes malice when publications constitute libel per se, if a publication is protected by qualified privilege, plaintiffs are required to prove that the defamatory statements were made with actual malice, i.e. with knowledge of the statement's falsity or with reckless disregard as to its truth or falsity. *See Democrat Pub. Co. v. Harvey*, 205 S.W. 908, 910 (Ky. App. 1918); *see also Stringer*, 151 S.W.3d at 797-99; *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). If an otherwise privileged defamatory statement is made with actual malice, the qualified privilege is abused. *Stringer*, 151 S.W.3d at 797-99. Abuse results in the loss of the qualified privilege. *Id.* at 797.

      The Local 89 newsletter article is protected by the qualified privilege insomuch as it a communication between Union members concerning disciplinary action taken against former Union officers. Therefore, Winstead and Hug must establish a genuine issue of fact as to whether the statement in the article was made with actual malice. In defamation cases where the defendant is an institution rather than an individual, the plaintiff is required to prove that the individual responsible for the statement's publication acted with the requisite state of mind, i.e. actual malice. *Holbrook v. Harman Automotive, Inc.*, 58 F.3d 222, 225 (6th Cir. 1995). Although Winstead and Hug have provided evidence as to the state of mind of certain officers of Local 89, they have not identified the individuals responsible for writing the article. As a result, they cannot establish an issue of fact as to whether the publisher of the statement acted with actual malice, and whether the qualified privilege was abused. Without proof that the qualified privilege was abused, Local 89 is entitled to its protection for the statements made in the November-December 2003 newsletter article.

- 8 -

As to Winstead's additional counterclaim for legal fees, because we previously determined in our August 24, 2006, Memorandum Opinion and Order (DN 81) that Local 89 never authorized expenditures for Winstead's legal fees, he cannot recover the $7,624.00 he claims is owed to him. Accordingly, Local 89 is entitled to summary judgment as to this count of Winstead's counterclaim.

For the reasons discussed above, the court will grant Local 89's motion for partial summary judgment. A separate order will be entered herein this date in accordance with this opinion.