UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GENERAL DRIVERS, WAREHOUSEMEN
AND HELPERS LOCAL UNION NO. 89               PLAINTIFF

v.                                            CIVIL ACTION NO. 3:03-CV-791-S

ROBERT WINSTEAD, et al.                       DEFENDANTS
                                              and THIRD PARTY PLAINTIFFS

v.

DANNY ROSS, et al.                            THIRD PARTY DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on cross-motions of the parties for summary judgment (DNs 91, 96). On August 24, 2006, this court entered a Memorandum Opinion and Order (DN 81) granting summary judgment to the Plaintiff, General Drivers, Warehousemen & Helpers Local Union No. 89 ("Local 89" or the "Union"), as to its claim against the Defendants and Third Party Plaintiffs, Robert Winstead ("Winstead") and Gary Hug ("Hug"). The issue now before the court involves the claims of Winstead and Hug against the Third Party Defendants, Danny Ross ("Ross") and Lon Fields ("Fields").

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,

536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The material facts are not in dispute. This action arose from the issuance of certain checks drawn on the account of Local 89 by Winstead and Hug, while serving as Local 89 president, and secretary-treasurer, respectively. In 1998, Winstead was indicted along with Fields, former president of Local 89, and Ross, former member of Local 89, for violations of Kentucky's campaign finance laws. A long legal battle ensued concerning the legality of the indictments. They were ultimately pardoned by Governor Paul Patton prior to trial in 2003.

While serving as Local 89 president, Winstead signed checks between December 19, 1999 and January 14, 2000 totaling over $107,000 drawn on Local 89 funds for legal fees incurred by Fields, Ross, and himself, in connection with the litigation over the indictments. While serving as secretary-treasurer, Hug co-signed two of the checks signed by Winstead. Of the total amount

drawn on Union funds, $11,213.00 went toward payment of Fields' legal fees, and $66,308.54 went toward payment of Ross's legal fees.

In May 2003, Local 89 brought formal charges against Winstead and Hug, alleging that they violated their fiduciary duties by spending Union funds without proper authorization.  A formal hearing was held in July 2003 before an International Brotherhood of Teamsters (IBT) panel.  At the hearing, the panel determined that, with respect to all of the checks, Winstead and Hug had failed to obtain the proper authorization from the Union membership for the withdrawal of Union funds.  Further, the panel found that with respect to some of the checks, they had failed to obtain the proper authorization from both the officers-elect and the membership.  As a result, the IBT panel found that Winstead and Hug had breached their fiduciary duties.  The IBT panel recommended that they be held jointly and severally liable to Local 89 for $107,265.31, the amount withdrawn without proper authorization. The panel's recommendation was then adopted on behalf of the IBT.

Because Winstead and Hug failed to pay the Union in compliance with the IBT's decision, Local 89 filed this action to recover the funds.  Winstead and Hug then filed the third party complaint which is the subject of the parties' cross motions.  In this court's August 24, 2006, Memorandum Opinion and Order (DN 81) we found, as a matter of law, that Winstead and Hug's actions constituted a breach of fiduciary duty under the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 501.  We concluded that the IBT panel's decision was not unfair or unreasonable, and that joint and several liability of Winstead and Hug for $107,265.31 constitutes proper restitution in light of their writing checks for this amount from the Union funds without obtaining proper authorization.  The issue now before the court is Winstead and Hug's claim

that Fields and Ross should be responsible for the amount awarded to Local 89 which represents amounts paid for their legal fees incurred in connection with the indictment.

The doctrine of subrogation is "an invention of equity, designed to prevent unjust enrichment by requiring those who benefitted from another paying their debt to ultimately pay it themselves." *Wine v. Globe American Cas. Co.*, 917 S.W.2d 558, 561 (Ky. 1996) (citing *Rollins v. Board of Drainage Com'rs*, 136 S.W.2d 1094, 1096 (Ky. 1939)). In *Rollins*, the Board of Drainage Commissioners (the "Commission"), diverted money from its construction fund into its bond and interest fund. *Rollins*, 136 S.W.2d at 1095. The money in the construction fund was to be used to pay the contractor who constructed the drainage system. *Id.* Instead, the Commission used the money to pay its bond holders. *Id.* The contractor filed suit to recover the amount due him. *Id.* The court noted that the Commission took money which had been allotted to the contractor, to which the bond holders had not the slightest claim, and applied it in satisfaction of the bonds and interest coupons. *Id.* at 96. The court stated that "it is for such cases as this that equity invented the doctrine of subrogation." *Id.* The court then stated that "equity requires that all bond holders and all land owners who benefitted from this diverted fund return the proportion they received to the rightful owner." *Id.*

In the case before this court, Winstead and Hug took Local 89 money and used it in satisfaction of Fields and Ross's legal fees. Like the bond holders in *Rollins*, neither Fields nor Ross had a claim to this money. Accordingly, we find that equity requires that Fields and Ross return the Union funds that were used to pay for their legal fees. Because Winstead and Hug have been held liable to Local 89 for the entire amount of the Union funds withdrawn without proper authorization,

the court will grant Winstead and Hug's motion for summary judgment as against Fields and Ross in the sum of $11,213.00 and $66,308.54 respectively.[1]

A separate order will be entered herein this date in accordance with this opinion.

---

[1] It should be noted that Fields and Ross contend that because the court's jurisdictional basis arises from Local 89's claim for breach of fiduciary duty under the LMRDA Winstead and Hug are not entitled to the relief requested. While the court recognizes the LMRDA's policy is to deter fiduciary violations, we do not find the relief afforded to Winstead and Hug, under the facts of this case to be in conflict with the LMRDA's remedial scheme.